## CARE AT A PUBLIC CROSSING.

Circuit Court of Morrow County.

THE CLEVELAND, CINCINNATI, CHICAGO & ST. LOUIS RAILWAY
COMPANY V. JAMES CORNWALL.

Decided, July 10, 1911.

*Negligence—Wagon and Team of Horses Injured at a Railroad Cross-*
*ing—Crossing and Adjacent Tracks Obscured by Smoke of Pass-*
*ing Train Which Was Immediately Followed by Another Train*
*Backing Over Crossing—Contributory Negligence—Burden of Proof*
*—Error of Court in Refusing to Direct Verdict for Railway Com-*
*pany.*

1. Where a person, in a wagon drawn by a team of horses, approaching
   a railroad crossing on a public highway, stops upon hearing the
   whistle of an approaching train, and, after such train passes over
   said crossing, which leaves said crossing and the adjacent tracks
   of the railroad obscured by smoke, immediately drives upon said
   crossing, without waiting for such smoke to disappear that he might
   have an unobstructed vision, and without taking other precautionary
   steps in the exercise of ordinary care to avoid danger, and his
   wagon and team of horses are injured in a collision with another
   train passing over said crossing, immediately after said first train,
   has passed over said crossing, is negligence, and will defeat a re-
   covery for such injury to which such negligence contributed.
2. Where the danger at a railroad crossing is increased by a volume of
   smoke upon such crossing, or other conditions · obstructing the
   vision, greater care and caution are imposed upon one about to
   pass over such crossing.
3. It is error upon the part of the trial court to refuse to sustain a mo-
   tion, at the conclusion of plaintiff's evidence, to direct a verdict for
   the defendant, in a collision case at a railroad crossing on a public
   highway, where the testimony of the plaintiff raises a clear presump-
   tion of negligence on his part which directly contributed to the
   injury of his property, in the absence of any tangible proof given
   tending to rebut such presumption.
4. In an action for damages for alleged negligence, where the defense
   of contributory negligence is interposed, it is error upon the part
   of the trial court to instruct the jury that "the burden of proof is
   upon the plaintiff of proving the negligence of the defendant as
   charged in the petition, and the burden is upon the defendant to
   make out the evidence of contributory negligence by the plaintiff's
   servant or agent," without the further instruction that if plaintiff's

own testimony in support of his cause of action raises a presumption of such contributory negligence, the burden rests upon him to remove that presumption.

*Cummings, McBride & Wolfe, C. H. Wood and Benjamin Olds,* for plaintiff in error.

*T. B. Mateer,* contra.

Shields, J.; Voorhees, J., and Crow, J., concur.

This proceeding in error is prosecuted in this court to reverse the judgment of the Court of Common Pleas of Morrow County, Ohio, wherein the plaintiff in error, defendant below, recovered a judgment against the defendant in error, plaintiff below.

The defendant in error brought suit in the court below to recover damages against the plaintiff in error for its alleged negligence and carelessness in destroying a certain vehicle and harness, and so crippling his team of mules that it became necessary to kill one of said mules belonging to the defendant in error. The amended petition, in substance, recites that said railway company is an Ohio corporation, that at the time hereinafter named it operated a line of railway between Cleveland, Ohio, and Cincinnati, Ohio, running through said Morrow county, Ohio, and that said railway crossed a public road in said Morrow county, in Gilead township, known as the Brocklesby crossing, which was used by the public in traveling on foot and in vehicles.

"That on the 20th day of January, A. D. 1909, between the hours of nine o'clock and ten o'clock A. M., one Ray Cornwall was traveling in a westerly direction along said public road in a covered vehicle drawn by a team of mules, and while in the act of crossing the defendant's railroad tracks the defendant caused one of its locomotives and train of cars to approach said crossing and pass over the tracks of said railroad, and negligently and carelessly omitted while so approaching said crossing to give any signal by bell, whistle, or otherwise, and by reason thereof the said Ray Cornwall was unaware of its approach.

"Plaintiff further says that said locomotive and train, consisting of four cars and one caboose, as run by said defendant, was not properly equipped with power brakes, used and operated by the engineer of said train, as required by statute, all of which was unknown to the said Ray Cornwall and this plaintiff.

"Plaintiff further says that by reason of the negligence of the said defendant in not sounding the whistle or ringing the bell in approaching said crossing, and in running said train without

properly equipping the same with power brakes and without any
fault or negligence of the said Ray Cornwall, the said locomotive
struck said vehicle and team of mules and utterly destroyed said
vehicle and harness and crippled said mules to such an extent
that it was necessary for the humane officer of Morrow county,
acting upon the request of the defendant, to kill one of said
mules, and all without fault or negligence whatever on the part
of the plaintiff, his agent, or servant.   That said vehicle, harness
and team were the property of the plaintiff, and said mule which
was killed, together with the harness and wagon which were in-
jured, were of the value of $200.00.

''That the said Ray Cornwall before driving upon said cross-
ing had waited for a freight train to pass said crossing and im-
mediately drove upon said tracks before the smoke of said freight
train had cleared away, when the train causing the damage to this
plaintiff, consisting of a locomotive, running backward and pull-
ing four cars and a caboose, and known as the 'water train,' and
in close proximity to said freight train, approached said crossing
with great speed, and the said defendant negligently and care-
lessly neglected to either ring the bell or blow the whistle in
order to warn the said Ray Cornwall of the approach of said
water train, and that by reason thereof the said Ray Cornwall
was unaware of the approach of said train, whereby this plaintiff
sustained a loss of his vehicle, harness and one mule, all of the
value of $200.00.''

Then follows an allegation that the plaintiff lost the use of his
mule and vehicle for a period of three months and was out of
employment for said period of time and that by reason thereof he
sustained the further loss of $120.00, for which sum, with the in-
jury to the vehicle and harness and the loss of his mule, he asks a
judgment for the sum of $320.00 against said railway company,
with interest thereon from the date of said accident.

To this amended petition the defendant railway company an-
swers, admitting its corporate character, that it operated a line
of railway from Cleveland, Ohio, through said Morrow county
to Cincinnati, Ohio, and that said railway crossed a road in said
county, known as the Brocklesby crossing.   It further alleges
that it is ignorant as to any injury to plaintiff's vehicle, harness
and mule, and denies the same, and denies the loss of employment
by reason of said alleged injury, and denies that said property
and loss of employment are of the value alleged.   It denies that
it carelessly and negligently run and operated its said train as
alleged, and it denies that it was guilty of any fault, carelessness

and negligence whatever that in any way contributed to any injury to the plaintiff or to his property.

For a further defense the defendant alleges that the injury to the plaintiff or to his property, if there was any, was caused by the fault, carelessness and negligence of the plaintiff himself, his agents or servants.    In short, the answer is a general denial of the negligence charged, and charges contributory negligence upon the part of the plaintiff.

To this answer the plaintiff filed a reply denying that the injury complained of was caused by the fault, carelessness and negligence of the plaintiff, his agent or servant.    In short, he denies all contributory negligence.

With the issues thus made up between the parties, trial was had, and at the close of the plaintiff's testimony, the defendant, through his counsel, made a motion that the court instruct the jury to return a verdict for the defendant, which motion was overruled by the court, to which ruling of the court the defendant excepted.    Thereupon said cause was further submitted to the jury and a verdict was returned by the jury in favor of the plaintiff.    A motion was duly filed for a new trial which was overruled by the court and judgment entered upon said verdict.

Thereupon a bill of exceptions was prepared and signed, and a petition in error filed in this court to reverse the judgment of said court of common pleas.    While several grounds of error are assigned in said petition in error for said reversal, counsel for plaintiff in error in their argument to this court rely mainly on two of said grounds of error, namely, that the court erred in refusing to sustain the motion of the plaintiff in error, defendant below, to direct a verdict in its favor upon the conclusion of the testimony of the defendant in error, plaintiff below, and that the court erred in its instructions to the jury as to the burden of proof in the case.

The testimony in the case tends to show that the plaintiff at the date named in the petition was the owner of the property injured.    That between nine and ten o'clock A. M., on said date, Ray Cornwall, a son of the plaintiy, then aged fifteen years, was driving a team of mules attached to a wagon, covered with canvas in front, over a milk route for his father, and in making said route drove over the Brocklesby crossing, going eastwardly, just before the accident, to a farmer's house near to said crossing to

get a can of milk, and after getting the milk he started west-wardly, driving back on the same road, until he says he heard the whistle of a locomotive attached to a freight train on the defendant's railway, going southwardly, when he stopped his team and wagon within a hundred feet of the track, and after the freight train went over the crossing it left a volume of smoke on the track, at and near the crossing and up as far as the whistling post some eighty rods north of the crossing, which smoke owing to the foggy condition of the weather "held close to the ground near the track." After the freight train passed over the crossing said witness testifies that he immediately started to go over and was on the crossing with the team and wagon when they were struck by what is known as the "water train," which backed down from the direction of said whistling post, without giving any signal, resulting in the injury complained of.

On direct examination (page 4 of the record) he testifies as follows:

"Q. Now tell the jury what happened when you come to the railway crossing there, what you done as to driving upon the railroad of the Big Four at the Brocklesby crossing? A. When I came to the railroad crossing I saw a freight coming and I stopped and waited until it went across and then I started right up just as soon as it got across, and I could not see the other train for smoke of the first one, and I pulled right on the track and when I got on the track why Mrs. Fields hollered and I raised up and looked and there was the other train right onto me."

On page 5 of the record:

"Q. State if there was anything obscured your view from the north? A. The smoke of the freight train for one thing.
"Q. Anything else? A. There wasn't much of anything else except the smoke of this first train.
"Q. How long had you been driving on the milk route? A. Abourt a year, put it all together."

On cross-examination (page 8 of the record):

"Q. You passed over that track very frequently? A. Yes, sir.
"Q. Now what do you say the condition of the weather was that morning? A. It was kind of foggy that morning.
"Q. And after the train went by did the smoke clear immediately away? A. Well, kind of rolled back of the train.
"Q. It was a foggy morning you say, and the smoke held close to the ground near the track? A. Yes, sir.

"Q. And how far back of the train did that condition occur, this smoke? A. Oh, just quite a ways.

"Q. And was the smoke on the crossing there yet when you drove up on it? Had it cleared away, or was it yet smoky there? A. A little smoky, but not so much when I drove up on the track, it kept rolling back.

"Q. After you drove on the track it began to get a little smoky and still the smoke came on as you got on the track, is that the way I understand you? A. I seen the smoke when I drove on the track, yes."

On pages 11 and 12 of the record:

"Q. Now when you come right up close to the track, Ray, how far can you see up the track? A. You can see quite a ways up the track.

"Q. See to St. James? A. Very nearly, see the smoke of St. James when you get right on the track.

"Q. Is the track straight or otherwise? A. It is straight.

"Q. It is a straight track from the crossing up to St. James, isn't it? A. I think so.

"Q. When you get up to the track, you can see just as far as your eye will carry you, isn't that a fact? A. Yes.

"Q. How soon after this first train had passed did you drive on the track? A. Just as soon as it had passed I started up and drove right on the track.

"Q. You didn't think another train was coming? A. No; I had no idea of another train coming.

"Q. You thought when that train had gone by, that's all there was of it, you could drive right across, and that's what you attempted to do? A. Yes.

"Q. Just as soon as that train went by you just started your mules and went right across the track? A. Yes.

"Q. Without attempting to see if there was another train coming? A. I looked up the track but I didn't suppose another train was coming though.

"Q. Why did you look up the track? A. I don't know what drawed my attention up that way.

"Q. You just happened to look up there? A. Yes.

"Q. You didn't look up to see if a train was coming? A. Not particular.

"Q. Did you listen to hear if there was another train coming? A. No, sir; just as soon as the other train passed I pulled up.

"Q. You just took it for granted that another train wasn't coming and drove right up on the railroad? A. Yes."

Testimony was given upon the trial below, tending to support the allegations in the amended petition that no statutory signals were given by the locomotive attached to the water train as it approached the crossing, and that it was not properly equipped with power brakes, although it does appear in testimony that two or more "short blasts" were given by said locomotive when said train was within a few feet from said crossing, not at such distance from the crossing, however, as the statute requires, the necessity of which, for the protection of the traveling public, becomes apparent in a case of a backing train upon and over a public crossing, but the omission to give such signals would not relieve the witness from the necessity of exercising ordinary care, for the protection of himself and his property, when about to go over this crossing, nor would the omission of the railway company to *properly* equip its cars with air-brakes, excuse such care, unless it be made to appear that such omission produced the injury complained of. But aside from the alleged negligence of the railway company in the respects complained of, does the evidence introduced upon the trial show such contributory negligence upon the part of the witness, Ray Cornwall, who was in charge of the property of the defendant in error at the crossing on the day mentioned, as to have warranted the court in sustaining the motion of the plaintiff in error, made at the close of the evidence of the defendant in error, to direct a verdict for the plaintiff in error? It appears by the evidence that said witness was familiar with said crossing, that the track of the said railway was unobstructed and could be seen for a long distance north of said crossing, perhaps twenty-five hundred feet, and except for the smoke emitted by the locomotive attached to the passing freight train, the approach of the water train could easily have been seen for a long distance north of said crossing. A person approaching a steam railroad crossing, which is a known place of danger, is presumed to exercise his or her faculties of sight and hearing—to look for the purpose and with the intent of seeing, and to listen for the purpose and with the intent of hearing the approach of trains. True, the witness says that he stopped his mules and vehicle on hearing the whistle of the locomotive attached to the freight train until it passed over the crossing, but did the duty of exercising ordinary

care then cease? Was he then relieved of further watchfulness? The railway company had the right-of-way over its tracks and had the right to run as many trains as its business called for, hence the duty of stopping, looking and listening was a continuing duty of the witness, not only until he approached, but until he passed over the crossing, and failing to do this, and the property of the defendant in error having thereby been injured, it was negligence on his part by which his right of recovery would be defeated.    Among other things, the witness testified on cross-examination, that after the freight train had passed he didn't look *to see if a train was coming,* nor did he listen to hear if there was another train coming, but proceeded to go over the crossing as soon as the freight train passed.    Under this testimony, the conclusion is clear that the witness failed in exercising the precaution necessary to authorize a recovery.    He testifies that he could not see the water train approach because of the smoke left on the track by the passing freight train.    If this is true, it only imposed upon him greater care and caution before attempting to drive upon the crossing.    *Railroad Co.* v. *Kistler,* 66 O. S., 326-344; *The Penna. Co.* v. *Morel,* 40 O. S., 388.

Again, in the case of *The Baltimore & Ohio Railroad Company* v. *McClellan, Admrx.,* reported in the 69 Ohio State, at page 142, it is held by our Supreme Court that:

"1.    The rule that a person in full possession of his senses of sight and hearing should exercise them to protect himself from danger when about to cross a known track of a steam railroad at a street crossing, applies to a condition where the atmosphere is more or less clouded by steam and smoke, and it is negligence on his part which will defeat a recovery for injuries received from a passing train, to undertake to cross without waiting for the atmosphere to clear so that his vision may be unobstructed, or taking other adequate means to ascertain the presence of danger.

"2.    Where the testimony of the plaintiff raises a clear presumption of negligence on his part which directly contributed to his injury, but no testimony is offered by him tending to rebut that presumption, it is the duty of the trial court to sustain a motion by the defendant made at the conclusion of plaintiff's evidence to direct a verdict, and a refusal to sustain such motion is error."

In the case at bar the undisputed facts are that the witness drove upon the crossing without looking or listening for a train,

and it is held in the case of *The Cleveland, Columbus, Cincinnati & Indianapolis Ry. Co.* v. *Edgar H. Elliott,* reported in the 28 Ohio State, at page 340 that:

"1.   The omission to ring the bell or sound the whistle at public crossings is not of itself sufficient ground to authorize a recovery, if the party, notwithstanding such omission, might, by the exercise of ordinary care, have avoided the accident.

"2.   What is such contributory negligence as will defeat a recovery is usually a question of mixed law and fact, to be determined by the jury from all the circumstances of the case and under proper instructions from the court, but where the undisputed facts show that by the exercise of ordinary care a party might have avoided injury, he can not recover."

The evidence submitted upon the part of the defendant in error, plaintiff below, being undisputed and without conflict on the main and vital issues involved, we are of the opinion that the motion to direct a verdict for the plaintiff in error, defendant below, should have been sustained.

Exceptions are taken to the charge of the court to the jury in respect to the burden of proof.   On page 65 of the record the court instructed the jury as follows:

"The burden of proof is upon the plaintiff, as I charged you, of proving the negligence of the defendant as charged in the petition, and the burden is upon the defendant to make out the evidence of contributory negligence by the plaintiff's servant or agent."

The charge in this respect, in our judgment, was not a full and correct statement of the law in this case.   True, the burden of proving the negligence of the defendant was upon the plaintiff, but where the plaintiff's own testimony raises a presumption of contributory negligence, the burden rests upon him to prove it. In the case of *The Baltimore & Ohio Railroad Co.* v. *Thomas Whitacre,* reported in the 35 Ohio State, at page 627, it is held by our Supreme Court that:

"If plaintiff's own testimony in support of his cause of action raises a presumption of such contributory negligence, the burden rests upon him to remove that presumption."

Other authorities might likewise be cited to the same effect, so that we think the jury was entitled to the further instruction that

if the plaintiff's own testimony raised a presumption of contributory negligence the burden was on him to remove it, and failing to give such instruction we think there was prejudicial error to the legal rights of the plaintiff in error.

Further exceptions are taken to the charge of the court in respect to the burden of proof, as the same appears on page 67 of the record, where the court instructed the jury "that if it appears in your judgment that the probabilities are in favor of the truth of such fact or circumstance, then such fact or circumstance is said to be proved by a preponderance of the evidence, and you should so find, although you are not satisfied or convinced of the truth of such fact or circumstance." This instruction we think is open to objection as not containing a correct statement of the law, and we, therefore, hold it to be prejudicial to the rights of the plaintiff in error.

Other questions are made upon the record, but counsel were content to argue and rely upon the foregoing grounds of error, and we, therefore, do not deem it necessary to pass upon them in view of our conclusions reached in respect to the motion to direct a verdict and as to the burden of proof.

The judgment of the court of common pleas will be reversed and said cause remanded to that court for further proceedings according to law.   Exceptions noted.